## ROQUE v. HENRY.

### No. 5929.

Court of Appeal of Louisiana. Second Circuit.

March 31, 1939.

Rehearing Denied April 28, 1939.

Arthur C. Watson and H. L. Hughes, both of Natchitoches, for appellant.

John G. Gibbs, of Natchitoches, for appellee.

TALIAFERRO, Judge.

Defendant herein brought suit against plaintiff herein in the district court for Natchitoches Parish, in October, 1931, on a promissory note, and on April 18, 1932, judgment was rendered and signed in his favor for $300.07, with recognition of a vendor's lien and privilege upon a certain Ford automobile. Issue in the case was joined by default. The suit was given No. 21297 and for purposes of brevity will hereinafter be referred to by that number.

A fieri facias issued on the judgment in April, 1932, under which the said automobile was seized and sold after due advertisement. The defendant was timely served with notice of the seizure and the time and place of sale and to appoint an appraiser. He made no appearance; nor did he oppose the sale. The car was sold on May 7th, and the plaintiff became the purchaser. It only brought $25. The writ was credited with the net proceeds, $5.50.

On January 19, 1938, the plaintiff caused another fieri facias to issue on said judgment, whereunder the Sheriff of Natchitoches Parish seized an undivided one-fourth interest in and to thirty acres of land in that parish, owned by the defendant, and advertised same for sale. This action precipitated the present suit.

Plaintiff herein (defendant in said suit No. 21297) attacks the legality of the seizure made under the lastly issued fieri facias, and sues to annul said judgment on the following grounds, to-wit:

1. That no service of process whatever was made on him in suit No. 21297.

2. Alternatively, if service was made, there was no legal default entered against him prior to rendition of judgment.

3. Further, in the alternative, that as he and his mother reside upon the 30-acre tract of land, it is his homestead, and being worth less than $2,000, is exempt from seizure.

He also alleges that the original indebtedness, evidenced by the note sued on, was extinguished prior to filing of suit thereon by delivery of the car back to the defendant herein and the acceptance of it by him with the express understanding that the note would thereby be extinguished in full.

Plaintiff sued out a temporary restraining order and after hearing a preliminary injunction issued.

Defendant generally denies the allegations made and relied upon by plaintiff to arrest the sale of the seized property and to have the judgment in suit No. 21297 annulled. He avers positively that plaintiff was served with process in that case and also with notice of seizure, etc., under which the car was sold. He denies that plaintiff now lives on the seized land, and avers that he removed therefrom two years prior and even though he did live thereon, having no dependents, he may not claim said land to be exempt from seizure for his obligations on the ground that it is

his homestead. And, further, in this connection, the right to assert a homestead exemption to the said land does not lie because it is owned in indivision, plaintiff himself only owning one-fourth interest therein. Defendant prays that the temporary restraining order be dissolved with statutory damages and actual damages consisting of his attorney's fee; that plaintiff's suit be dismissed and his demands rejected at his cost.

After trial on the merits, the preliminary injunction was perpetuated and the judgment attacked was annulled and set aside. Defendant prosecutes this appeal therefrom.

■ The tract of land herein referred to is owned in indivision by plaintiff and his co-heirs. In view of this sort of ownership, the land cannot become the homestead of either co-owner. In other words, land held in indivision may not be made the subject of a homestead, except in the one instance laid down in the Constitution. Caire & Graugnard v. Hickox et al., 136 La. 803, 67 So. 887; Bank of Jeanerette v. Stansbury, 110 La. 301, 34 So. 452.

■ In regard to the extinguishment of the note sued on in suit No. 21297, testimony was admitted at length on the issue. If the service in the case was good and the judgment otherwise valid, this question was improperly gone into. No harm has been done by so doing. On this question of fact, the decided preponderance of the testimony supports defendant's contention that the car was not delivered to him in full settlement of the note. Plaintiff asked that he accept return of the car and mark the note paid, but this was refused. The car had been wrecked. Its value had been materially reduced while in plaintiff's possession. It only brought $25 at sheriff's sale. It would have been unreasonable to expect defendant to accept its return in settlement of the note.

At the time suit No. 21297 was filed, plaintiff herein lived with his mother, a very old woman, on the 30-acre tract referred to. He was not at home when the deputy sheriff undertook to serve citation and petition. His mother was there. The return on the citation discloses that the papers were served upon "Munnia Roque, a person over the age of 14 years, residing there, whose name is known to me or was learned by interrogating." It is signed by the deputy making the service. The return on the notice of seizure (when the car was seized) shows that domiciliary service was made by handing same to "Obaire Roque", who is evidently the same person as "Munnia Roque". It is shown that plaintiff's mother's real name is Philomene Roque, but she is often referred to and is commonly called "Madam Obaire Roque". She refers to herself by that appellation. She is of French extraction and speaks brokenly. The testimony of the deputy sheriff makes it quite clear that he served the papers on a very old woman living in the house on said land at which time plaintiff made it his home. The deputy states that he talked to this old woman for several minutes at time the service was made. On account of her broken speech and the fact that she went by more than one name, may be attributed the failure of the deputy to correctly write her name in his return; but the fact remains that the person on whom the service was made lived in the house occupied by plaintiff herein. Since filing of the present suit the deputy who made the service in question again visited the house in which the service was made and there found the same old woman to whom the papers were handed in October, 1931.

■ We are convinced that the service under attack was and is valid. Even if not so, in view of the conclusions reached by us, as will be hereinafter disclosed, plaintiff is now without right to challenge same.

The minute entry of November 21, 1931, in suit No. 21297 reads as follows: "Default entered upon application of counsel for plaintiff, through the clerk."

Because it appears that this default was not moved for by plaintiff or his counsel in open court, plaintiff contends it is so irregular as to be null and void and wholly insufficient to serve as the basis for the judgment subsequently rendered and signed.

We do not think it necessary to a correct determination of this case to definitely pass upon the question propounded by plaintiff's contention relative to the effect of this judgment by default.

Article 612 of the Code of Practice reads:

"The nullity of a judgment rendered against a party without his having been cited, or by an incompetent judge, even if all the formalities of the law have been observed, may be demanded at any time, unless the defendant were present in the parish, and yet suffered the judgment to be executed without opposing the same.

"The same rule shall govern, as regards a defendant not qualified to appear in a suit where judgment has been given against him, if he suffer the judgment to be executed against his property without opposing the same."

Appellant argues, using this article as a basis, that appellee by allowing the judgment under attack to be executed by seizure and sale of his property without opposition, and seven years having passed without his questioning the validity of the judgment, or the proceedings thereunder, he is now precluded from so doing; that by his laches he is forever barred from relief if he was ever entitled to any. We think this position well taken.

Under the plain terms of this article, appellee being a resident of Natchitoches Parish, lost his right to seek annullment of the judgment for lack of legal service upon him, when he passively stood by and knowingly allowed his property to be sold in partial satisfaction of it. He "suffered the judgment to be executed without opposing the same."

There are scores of cases wherein this article has been applied as written. Cullotta v. Grosz, 173 La. 83, 136 So. 95; Carrere v. Aucoin, 127 La. 59, 53 So. 427; Covas v. Bertoulin, 44 La.Ann. 683, 11 So. 143; Succession of Corrigan, 42 La.Ann. 65, 7 So. 74; Stackhouse v. Zuntz, 41 La.Ann. 415, 6 So. 666; Frank v. Currie, La.App., 172 So. 843, 848.

This article does not say that the right to sue to annul a judgment rendered without issue being joined by answer or a regular default entered for the legal time prior thereto, is lost if execution of the judgment is allowed without opposing same; but we believe the same rule applies, viz; that because of laches and indifference, the right to have the judgment annulled is lost. If the lack of service may be cured by laches, a fortiori should the right to attack a judgment because of an irregular default be lost in same manner. The acquiescence of the defendant implied from his silence forms the basic reason for enforcing the plea of laches against him.

In Andrews v. Sheehy, 125 La. 217, 51 So. 122, 124, the court said: "And he [defendant] may acquiesce in a judgment illegally rendered by voluntarily executing it, or by permitting it to be executed, without opposition."

The following appears in Succession of Corrigan, supra [42 La.Ann. 65, 7 So. 76] viz;

"It is a well-settled principle that no action lies against a judgment voluntarily executed or acquiesced in by the debtor (Code Proc. art. 567), or when the debtor has been guilty of laches (Id. art. 612; Norris v. Fristoe, 3 La.Ann. 646; Swain v. Sampson, 6 La.Ann. 799).

"It is upon this principle that the Code of Practice provides that a party against whom a judgment has been rendered without his having been cited cannot demand its nullity when such party was present in the parish, and yet suffered the judgment to be executed without opposing the same. Code Prac. art. 612.

"In the present instance it appears from the record that the property ordered to be sold to effect a partition was advertised by the designated auctioneer as property belonging to the succession of the deceased, and as ordered to be sold by the judgment in partition rendered in the matter.

"The defendant, was and still is, a resident of the parish of Orleans, in which the judgment was rendered and executed. He was not shown that the good conscience was opposed to the execution of the judgment, and that he could not have averted its execution. Norris v. Fristoe, 3 La.Ann. 646; Swain v. Sampson, 6 La.Ann. 799. He was certainly guilty of fatal laches, and cannot be relieved."

It is obvious from these authorities that laches may be enforced against a defendant in cases not specifically covered by article 612 of the Code of Practice. There is strong reason for the rule and its enforcement. A litigant should raise his voice in his own defense when it is opportune to do so. He should not sit idly by and see a status attained, ofttimes based upon his silence and inaction, and then take the initiative looking to the destruction of that status by invoking defenses he should have asserted prior thereto.

Relative to the issuance and dissolution of injunctions, and effects flowing therefrom, Article 304 of the Code of Practice, in part, reads, viz;

"And on the trial of the injunction, the surety on the bond shall be considered as a party plaintiff in the suit; and in case the injunction be dissolved, the court, in the same judgment, shall condemn the plaintiff

and surety (although that plaintiff be a third person enjoining the execution of a judgment between other parties), jointly and severally, to pay to the defendant interest at the rate of ten per cent. per annum on the amount of the judgment, and not more than twenty per cent. as damages, unless damages to a greater amount be proved; * * *."

The judgment attacked bears eight per cent interest, and attorney's fee therein fixed is twenty-five per cent. In the present case we deem an award of damages in favor of defendant for $100, including the fee of counsel employed to procure a dissolution of the temporary restraining order and injunction, adequate. Brantley v. Pruitt et al., 175 La. 879, 144 So. 604.

Plaintiff was authorized to litigate in forma pauperis, and therefore gave no bond to secure the issuance of the injunctive orders herein.

For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed; plaintiff's demands are hereby rejected and his suit dismissed at his costs. It is further ordered, adjudged and decreed that defendant, J. H. Henry, Jr., have and recover judgment against plaintiff, Dennis Roque, in the sum of One Hundred Dollars ($100), with five per cent per annum interest from judicial demand herein until paid.